**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**IN RE SEALED SEARCH WARRANT**
**EXECUTED AT 5914 N. TAMPA ST.**

                                      Case No.: 23-mc-1066

_____/

**TIMES PUBLISHING COMPANY'S MOTION TO INTERVENE FOR THE**
**LIMITED PURPOSE OF OBTAINING ACCESS TO SEARCH WARRANT**
**COURT RECORDS WITH SUPPORTING MEMORANDUM OF LAW**

Times Publishing Company ("The Times"), publisher of *The Tampa Bay Times*, moves to intervene in this matter for the limited purpose of unsealing and obtaining access to all documents filed with this Court related to a search warrant executed on Monday, May 8, 2023, at 5914 North Tampa Street, Tampa, FL 33604, the residence of reporter Tim Burke and Tampa City Councilwoman Lynn Hurtak (the "Search Warrant Records").

The requested Search Warrant Records include, without limitation: (1) the search warrant itself; (2) the search warrant application; (3) any motion to seal search warrant-related records; (4) any resultant order regarding a motion to seal; (5) any search warrant returns; and (6) all probable cause affidavits filed in support of obtaining the search warrant.

Mr. Burke and Councilwoman Hurtak have publicly confirmed and discussed the search, which has been widely reported locally and statewide by

news outlets. The Times thus requests this Court enter an Order granting it leave to intervene and immediately unsealing all Search Warrant Records currently under seal, and otherwise making all such records presently available for public review.

## MEMORANDUM OF LAW

### I.   Background Regarding the Search Warrant Records.

On Monday, May 8, 2023, Federal Bureau of Investigation ("FBI") agents, acting pursuant to a search warrant, searched Mr. Burke and Councilwoman Hurtak's residence, seizing records. The search has been the subject of intense news coverage.[1]

---

[1] *See, e.g.*, *Tampa City Council member Lynn Hurtak's home searched by FBI,* Tampa Bay Times, May 8, 2023, *available at*: https://www.tampabay.com/news/florida-politics/2023/05/08/tampa-city-council-member-lynn-hurtaks-home-searched-by-fbi/; *Lynn Hurtak says FBI search was related to husband's work as a journalist*, Bay News 9, May 10, 2023, *available at:* https://www.baynews9.com/fl/tampa/news/2023/05/09/fbi-agents-search-home-of-tampa-city-council-member-lynn-hurtak; *FBI raids Lynn Hurtak's home after husband named on search warrant*, Florida Politics, May 9, 2023, *available at*: https://floridapolitics.com/archives/610907-fbi-raids-lynn-hurtaks-home-after-husband-named-on-search-warrant/; *Councilwoman claims FBI search of family home was related to husband's work as journalist*, ABC Action News, updated May 10, 2023, *available at*: https://www.abcactionnews.com/news/region-hillsborough/fbi-searches-tim-burke-and-lynn-hurtaks-home-monday; *Questions remain after FBI raids home of Tampa city council member*, Fox 13 Tampa Bay, May 9, 2023, *available at*: https://www.fox13news.com/news/questions-remain-after-fbi-raids-home-of-tampa-city-council-member; *Details unclear after FBI seizes electronics from Tampa journalist Timothy Burke, husband of councilwoman Lynn Hurtak,* Tampa Bay Creative Loafing, May 9, 2023, *available at*: https://www.cltampa.com/news/details-unclear-after-fbi-seizes-electronics-from-tampa-journalist-timothy-burke-husband-of-councilwoman-lynn-hurtak-15607368; *FBI Raids Home of Tampa City Councilwoman Lynn Hurtak and Journalist Tim Burke*, Daily Beast, May 9, 2023, *available at:* https://www.thedailybeast.com/fbi-raids-home-of-tampa-city-councilwoman-lynn-hurtak-and-journalist-tim-burke.

To date, despite the immense public interest in the search, the public, including The Times, has been prevented from accessing any court records related to this search warrant, including the warrant itself. However, once a warrant is executed, the warrant itself, at a minimum, is routinely available. Nonetheless, all records have been sealed relating to this search. In addition, the typical docket is not readily available.

This matter is one of utmost public interest, involving a well-known journalist and a current government official.

The Times has devoted significant newsgathering resources to providing the public with information about this search in a climate in which the uncertainty about the purpose and basis of the search is fueling speculations and conspiracy theories. Access to all Search Warrant Records—which currently appear to be under seal—would facilitate The Times' efforts to inform the public of these highly newsworthy events in a timely and comprehensive manner.

## II.   The Times Has Standing to Intervene.

The Eleventh Circuit has recognized the news media's right to intervene in matters to challenge the denial of access to court records. *See, e.g.*, *United States v. Ellis*, 90 F.3d 447, 449 (11th Cir. 1996), *cert. denied*, 519 U.S. 1118 (1997); *Newman v. Graddick*, 696 F.2d 796, 800 (11th Cir. 1983). Only through intervention can the public's right to open courts and records be vindicated. *Newman*, 696 F.2d at 800.

There is no question that The Times has standing to intervene for access as a news organization. It publishes *The Tampa Bay Times*, a daily newspaper of general circulation throughout the Tampa Bay area and statewide. The Times also maintains a news website at www.tampabay.com. Its journalists use public records, including court records, as important newsgathering sources. For decades, The Times has reported on Tampa government officials.

### III. This Court Should Grant Access to the Search Warrant Records.

#### A. *A Presumptive Right of Access Attaches to the Search Warrant Records.*

As the Eleventh Circuit has recognized, "[t]he press has standing to intervene in actions to which it is otherwise not a party in order to petition for access to court proceedings and records." *Comm'r, Ala. Dep't of Corr. v. Advance Local Media, LLC*, 918 F.3d 1161, 1170 (11th Cir. 2019); *Newman*, 696 F.2d at 800. This right has been extended both to criminal trial proceedings and certain court records. *See, e.g.*, *Press-Enterprise Co. v. Superior Court of California*, 478 U.S. 1, 10, 13 (1986) ("*Press-Enterprise II*") (right of access to preliminary hearings); *Press-Enterprise Co. v. Superior Court of California*, 464 U.S. 501 (1984) (right of access to voir dire); *Associated Press v. United States District Court*, 705 F.2d 1143, 1145 (9th Cir. 1983) (right of access to court records and transcripts). Further, this constitutional right attaches to records that have been historically available to the

public and whose disclosure advances the functioning of the judicial system. *Press-Enterprise II,* 487 U.S. at 8-9.

In addition, both the First Amendment and the common law protect the media and the general public's right of access to judicial proceedings and records. *See Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1310-11 (11th Cir. 2001); *see Nixon v. Warner Commc'ns*, 435 U.S. 589, 597-98 (1978) (recognizing a common law right to access judicial records). In fact, the Eleventh Circuit "has been resolute" in enforcing the "presumption of public access" to judicial records because "access to judicial proceedings is crucial to our tradition and history, as well as to continued public confidence in our system of justice." *Callahan v. United Network for Organ Sharing*, 17 F.4th 1356, 1358-59 (11th Cir. 2021).

Search warrants and the documents filed in support of search warrant applications are judicial records entitled to this presumption of access. *See, e.g.*, *United States v. Peterson*, 627 F. Supp. 2d 1359, 1374 (M.D. Ga. 2008); *United States v. Vives*, 2006 U.S. Dist. LEXIS 92973, at *2-3 (S.D. Fla. Dec. 21, 2006); *In re Four Search Warrants*, 945 F. Supp. 1563, 1567 (N.D. Ga. 1996); *In re Search of Office Suites for World & Islam Studies Enter.*, 925 F. Supp. 738, 742 (M.D. Fla. 1996); *United States v. Shenberg*, 791 F. Supp. 292, 293 (S.D. Fla. 1991).[2]

---

[2] *See also L.A. Times Commcn's, LLC v. United States*, 28 F.4th 292, 297 (D.C. Cir. 2022); *United States v. Sealed Search Warrants*, 868 F.3d 385, 396 (5th Cir. 2017); *Baltimore Sun Co. v. Goetz*, 886

As one court has explained, "public access to documents filed in support of search warrants is important to the public's understanding of the function and operation of the judicial process and the criminal justice system and may operate as a curb on prosecutorial or judicial misconduct." *In re Search Warrant for Secretarial Area Outside Office of Gunn ("Gunn")*, 855 F.2d 569, 573 (8th Cir. 1988). Thus, in general, "once the warrant and application have been returned to the court, the public and press should have full access." *In re Search of Office Suites*, 925 F. Supp. at 742.

This presumptive right can be overcome only if the government demonstrates an overriding interest to justify sealing and such sealing is no more restrictive than required to protect that interest. *See id.*

This First Amendment and common law right of access is grounded in the value afforded to public monitoring of judicial proceedings. "[The] right to inspect and copy judicial records . . . like the right to attend judicial proceedings, is important if the public is to appreciate fully the often significant events at issue in public litigation and the workings of the legal system." *Newman* 696 F.2d at 803. Just as with open court proceedings, broad public access to filed court records helps ensure "that the proceedings [are being] conducted fairly," while

---

F.2d 60, 64 (4th Cir. 1989); *In re Search Warrant for Secretarial Area Outside Office of Gunn* (*"Gunn"*), 855 F.2d 569, 573 (8th Cir. 1988).

discouraging "perjury, the misconduct of participants, and decisions based on secret bias or partiality." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 569 (1980); *see also Associated Press*, 705 F.2d at 1145 ("there is no reason to distinguish between pretrial proceedings and the documents filed in regard to them").

Public access further promotes the "public acceptance of both the [judicial] process and its results," an "awareness that society's responses to criminal conduct are underway," and the "prophylactic aspects of . . . community catharsis." *Richmond Newspaper*, 448 U.S. at 571; *Press-Enterprise*, 478 U.S. at 9. For these reasons, "[a] presumption of access must be indulged to the fullest extent not incompatible with the reasons for closure." *Newman*, 696 F.2d at 802; *see also United States v. Rosenthal*, 763 F.2d 1291, 1293 (11th Cir. 2007) (recognizing "presumptive common law right to inspect and copy judicial records.")

Those policy considerations are certainly present when considering whether the Search Warrant Records should remain sealed. As *Gunn* explained:

> [E]ven though a search warrant is not part of the criminal trial itself, like voir dire, a search warrant is certainly an integral part of a criminal prosecution. Search warrants are at the center of pre-trial suppression hearings, and suppression issues often determine the outcome of criminal prosecutions.

855 F.2d at 573.

### B. *Government Bears the Burden of Overcoming Public Access Rights.*

It is the government's burden to overcome this presumption of access. For warrant records to remain under seal a court must determine, in clearly articulated findings, that the government established a specific, compelling interest justifying an ongoing seal that is no broader than necessary to serve that interest. *See In re Search of Office Suites*, 925 F. Supp. at 742; *Brown v. Advantage Eng'g, Inc.*, 960 F.2d 1013, 1015-16 (11th Cir. 1992); *Wilson v. Am. Motors Corp.*, 759 F.2d 1568, 1570-71 (11th Cir. 1985).

In evaluating whether there is good cause to overcome the common law presumption of access, courts consider factors including "whether the records are sought for such illegitimate purposes as to promote public scandal or gain unfair commercial advantage, whether access is likely to promote public understanding of historically significant events, and whether the press has already been permitted substantial access to the contents of the records." *Comm'r, Ala. Dep't of Corr.*, 918 F.3d at 1169. Courts also consider "whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, [and] whether the information concerns public officials or public concerns." *Romero v. Drummond Co.*, 480 F.3d 1234, 1246 (11th Cir. 2007).

8

However, naked assertions of some interest justifying secrecy, devoid of particulars, will not justify closure. Rather, for each record that the government claims sealing remains necessary, it must "describe in considerable detail the nature, scope and direction of the government's investigation and the individuals and specific projects involved." *Gunn*, 855 F.2d at 574; s*ee also Peterson*, 627 F. Supp. 2d at 1374 (granting motion to unseal where government "failed to articulate a sufficient reason to keep the warrant and affidavit under seal"); *Vives*, 2006 U.S. Dist. LEXIS 92973, at *3 (government must show that "sealing is essential to preserve higher values").

Further, to the extent any claim is made that disclosure will compromise the identities of cooperating persons, a compelling justification for continued secrecy must also be established. *See In re Searches of Semtex Indus. Corp.*, 876 F. Supp. 426, 429 (E.D.N.Y. 1995).

At bottom, in every case, and for every item of information, the government's arguments for sealing must be "supported by the record" and mere "conclusory assertions are insufficient to allow review; specificity is required." *Newman*, 696 F.2d at 803; *In re The Baltimore Sun Co.*, 886 F.2d 60, 66 (4th Cir. 1989).

After the government provides its arguments, the Court then undertakes its analysis for each document sought to be sealed on a record-by-record basis.

9

When doing so, the Court must consider whether the disclosure of each individual record comprising the Search Warrant Records would compromise the government's asserted interest. *See, e.g.*, *Chicago Tribune Co.*, 263 F.3d at 1314-15 (holding that district court failed to make sufficient factual findings regarding "specific documents" and directing it to consider "the nature and character of the information in question," supporting its decision "by findings of fact"); *see also Wellcare Health Plans, Inc.*, No. 8:07-MJ-1466-TGW, 2007 WL 4240740, at *1 (M.D. Fla. Nov. 28, 2007) (assessing each warrant-related document individually and finding warrant, exhibits, return, motion to seal and sealing order all public); *Vives*, 2006 U.S. Dist. LEXIS 92973, at *2-5 (analyzing request to unseal various docket entries on document-by-document basis and unsealing, with minor redactions, draft of warrant and search warrant affidavit); *In re Search of Office Suites*, 925 F. Supp at 739 (unsealing affidavit and order sealing affidavit in support of search warrant while sealing affidavit itself).

Just like the *Wellcare* court determined, the presumption of access is particularly difficult to overcome for records like the warrant itself, any motion to seal, and any resulting sealing order. Additionally, records whose contents have already been acknowledged—such as in this case where the particulars of the actual search warrant were disclosed by Mr. Burke and Councilwoman Hurtak— can no longer present a disclosure risk. *See Peterson*, 627 F.2d at 1373 (recognizing

that "whether the press has already been permitted substantial access to the contents of the records" must be considered in determining whether to allow access to judicial records).

Even if the government were to establish a compelling reason to justify a continued seal, this Court must consider the proper scope of that seal and whether alternatives to total closure exist. *See In re Search of Office Suites*, 925 F. Supp. at 743; *see also Romero*, 480 F.3d at 1246 (courts consider "the availability of a less onerous alternative to sealing the documents"); *Vives*, 2006 U.S. Dist. LEXIS 92973, at *3 (restrictions on access must be "narrowly tailored to serve the interest" identified). As such, this Court should consider whether the redaction of limited information would serve to protect any established compelling interest. *See, e.g., Shenberg*, 791 F. Supp. at 294 (requiring redaction of certain sensitive information contained within search warrant affidavit before making it public); *In re: Sealed Search Warrant*, Case No. 22-8332-BER, Slip Op. at 1 (ECF Nos. 74 & 80) (S.D. Fla. Aug. 18 and Aug. 22 and Aug. 25, 2022) (ordering unsealing of redacted affidavit); *In re: Sealed Search Warrant*, Case No. 22-8332-BER, Slip Op. at 13 (ECF Nos. 80, 94) (S.D. Fla. Aug. 22, 2022) (ordering unsealing of redacted affidavit).

For example, in *Vives*, the court unsealed an affidavit in support of a search warrant but permitted redaction of a confidential informant number because

release of that information "could hinder government investigations and lead to the identification of a cooperating witness." 2006 U.S. Dist. LEXIS 92973, at *3.

This is far from the typical case. The investigation has been made public by the target and details of the investigation have appeared in publications throughout Tampa Bay. In short, with so much publicity surrounding the search, the Court should be skeptical about any possible government claims that disclosure of this true information will invade privacy, disturb the confidentiality of an investigation, tip off potential witnesses, or lead to the destruction of evidence.

### C. *The Public Interest In Current Government Official's Actions Is Particularly High And Favors Access.*

Investigations regarding the conduct of public officials are of the utmost public interest. Naturally, courts have recognized that interest while assessing public access rights, and that consideration weighs heavily in any balance between competing access rights and secrecy concerns. *See, e.g.*, *Romero*, 480 F.3d at 1246 ("[i]n balancing the public interest in accessing court documents against a party's interest in keeping the information confidential, courts consider…whether the information concerns public officials or public concerns…."); *United States v. Beckham*, 789 F.2d 401, 413 (6th Cir. 1986) ("[W]hen the conduct of public officials is at issue, the public's interest in the operation of government adds weight in the balance toward allowing permission to copy judicial records.") *United States v.*

12

*Edwards*, 672 F.2d 1289, 1294 n.11 (7th Cir. 1982) ("there is a strong presumption in support of the common law right to inspect and copy judicial records," particularly where "the trial bore upon the conduct of a public official").

There can be no doubt that an FBI search of a sitting City Council member's and a well-known reporter's residence is of core public concern. So too is this Court's decision to authorize that search.

### IV. Conclusion.

For the foregoing reasons, The Times respectfully requests this Court enter an Order granting it leave to intervene in this matter and providing it immediate access to the Search Warrant Records.

### LOCAL RULE 3.01(g) CERTIFICATION

Undersigned counsel for The Times Publishing Company certifies that on the afternoon of May 12, 2023, counsel made reasonable efforts to confer with the United States Attorney's Office for the Middle District of Florida. Counsel called the U.S. Attorneys' Office and left a voicemail. However, due to the sealed nature of this matter, counsel is unaware of which Assistant U.S. Attorney is handling the matter, creating an additional hurdle for a conferral. Pursuant to Rule 3.01(g)(3), counsel will supplement this certification within three days after either contact with the United States Attorney's Office or expiration of the three days.

Dated: May 12, 2023                     Respectfully submitted,

                                        THOMAS & LOCICERO PL

                                        /s/ *Carol Jean LoCicero*
                                        Carol Jean LoCicero (FBN 603030)
                                        Jon M. Philipson (FBN 92960)
                                        601 South Boulevard
                                        Tampa, FL 33606
                                        Telephone: (813) 984-3060
                                        Facsimile: (813) 984-3070
                                        clocicero@tlolawfirm.com
                                        jphilipson@tlolawfirm.com
                                        tgilley@tlolawfirm.com

                                        *Attorneys for Times Publishing Company*

## CERTIFICATE OF SERVICE

I hereby certify that on May 12, 2023, a true and correct copy of the foregoing document is being electronically filed and will be furnished via CM/ECF. A copy of the foregoing is also being served by hand delivery, to:

U.S. Attorney's Office
Middle District of Florida
Tampa Division
400 North Tampa Street
Suite 3200
Tampa, FL 33602

                                        /s/ *Carol Jean LoCicero*
                                        Carol Jean LoCicero