UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TIMES PUBLISHING COMPANY,

    Plaintiff,

v.    Case No. 8:23-mc-0014-WFJ-SPF
                                                                                                                             8:23-mj-1541-SPF

UNITED STATES OF AMERICA,

    Defendant.
_____/

**ORDER**

In this miscellaneous case related to an FBI investigation into cyber crimes, before the Court is Timothy Burke's Motion to Unseal Sworn Affidavit and for Return of Property Under Rule 41(g) (Doc. 25) and the United States' Response in Opposition (Doc. 33). For the reasons stated here, Burke's motion is denied without prejudice.

**I.    Background**

Movant Timothy Burke ("Burke") is a freelance investigative journalist who works from his home in Tampa. On May 4, 2023, the undersigned found probable cause supported the United States' application for a warrant to search Burke's home for the fruits, instrumentalities and/or evidence of violations of 18 U.S.C. § 1030 (intentional unauthorized access of a computer), and 18 U.S.C. § 2511 (intentional interception and disclosure of wire, oral, or electronic communication). *In the Matter of the Search of Premises Located at [XXXX] N. Tampa St.*, No. 8:23-mj-1541-SPF. The Court approved the search warrant and, at the United States' request and in the interests of justice, sealed the warrant

application, the warrant, the affidavit supporting the warrant, the United States' motion to seal these documents, and the Order sealing them.

FBI agents executed the warrant on May 8, 2023, and seized "approximately two dozen electronic devices and two hard copy items" (Doc. 33 at 4; *see* redacted evidence log, Doc. 18-1 at 28-29). According to Burke, this totaled over 100 terabytes of data across all the seized devices (Doc. 25 at 4). The FBI's search of Burke's home office caught the media's attention, and on May 12, 2023, the Times Publishing Company (which had reported the story) moved to intervene in the criminal proceeding and requested that the Court unseal the application, warrant, affidavit, motion to seal, the Court's Order sealing the documents, and any search warrant returns (the "Search Warrant Records") (Doc. 1). The Court granted the media company's request to intervene and – with the United States' consent – unsealed redacted versions of the Search Warrant Records, except for the federal agent's affidavit supporting the search warrant (Doc. 18-1). The Court ordered the parties to file supplemental briefs on the continued sealing of the agent's affidavit (Doc. 18).

After examining the affidavit *in camera* and considering the parties' supplemental briefings, the Court denied the Times Publishing Company's motion to unseal the affidavit (Doc. 23). In reaching this finding, the Court weighed the public's right of access to the unredacted contents of the affidavit against the United States' interest in keeping the information under seal:

> On the one hand, multiple media outlets, including the Times Publishing Company, have reported on the FBI's search (*see* 8:23-cv-0014-WFJ-SPF, Doc. 22 at 1-2). The searched premises belongs to a member of the media. And the media has publicly speculated about the identity of some of the alleged victims of the crimes under investigation (*Id.*). These factors boost the public's interest in the affidavit's contents. But on the other hand, the agent's affidavit details

2

> the scope and direction of the Government's investigation, identifies the individual(s) being investigated, references the identities of victim(s), witness(es), and/or co-conspirator(s), and reveals the agent's investigative techniques. Compounding these factors is that the criminal proceeding is pre-indictment – disclosing the contents of the agent's affidavit likely would stymie both the nature of the Government's investigation and how law enforcement is conducting it. Weighing the public's right of access against these compelling governmental interests, the scale tips in the United States' favor. *See United States v. Valenti*, 987 F.2d 708, 714 (11th Cir.), *cert. denied*, 510 U.S. 907 (1993) (acknowledging prejudice to ongoing investigation as compelling reason for denying motion to unseal transcripts of closed proceedings).

(Doc. 23 at 3). Reasoning that "each section of the affidavit builds on the one before it, and the sum of these parts equals the Government's probable cause[,]" the Court found that sealing the entire affidavit was necessary to protect the integrity of the investigation (*Id.*).

Since the seizure, Burke's attorneys have "engaged in efforts to effectuate the return of Mr. Burke's property[.]" (Docs. 25 at 4). Burke reports that "the government has agreed to return – over more time – materials that were never covered by the warrant, some of which include journalistic work product, sources and methods, privileged communications, and related materials." (*Id.* at 5). But "[t]hey have not agreed to provide copies of his work product, including the thousands of live feeds which make up the privileged contents of Mr. Burke's newsroom." (*Id.*). Instead, the United States unilaterally drafted and proposed a stipulation to Burke "in the interest of expediting the return of the seized items and/or their contents[.]" (Doc. 33, Exh. A at 3). Burke's motion followed.

3

## II. Burke's Motion to Unseal Agent's Affidavit

Burke asks the Court to revisit its decision to seal the agent's affidavit (Doc. 25). According to Burke, the allegedly criminal conduct supplying the Government with probable cause is no longer just a source of media speculation. Publications like Vanity Fair and New Republic have reported that the FBI searched Burke's home because he posted on his website excerpts of an unedited livestreamed interview of Kanye West by then-Fox News reporter Tucker Carlson (*Id.* at 2-3, n. 2-3). News outlets seized on this unedited content, because Ye's comments – cut by Fox News before it aired the interview – were antisemitic and racist, Burke says. According to Burke, this prompted law enforcement's suspicion that Burke had hacked into Fox News' livestreams and intercepted the Ye interview in violation of the Computer Fraud and Abuse Act ("CFAA") and the wiretap statute (*Id.*).

Burke contends the balancing test favors the public's right of access to the agent's affidavit more now than it did before. The more public the story behind the unedited interview is – Burke's argument goes – the less compelling the need for the Court to seal the agent's affidavit. But beyond arguing that the cat is out of the bag, Burke offers no new argument that convinces the Court to recalibrate the scale, which the undersigned already determined tipped in favor of the Government's compelling interest in protecting and safeguarding the integrity of its investigation at this pre-indictment stage. In its Order denying the Times Publishing Company's motion to unseal the affidavit, the Court found that "[e]ven information in the affidavit that is already publicized is 'inextricably intertwined with the Government's argument for probable cause' and cannot be

4

unsealed." (Doc. 23 at 4, quoting *In re Search of Office Suites for World & Islam Studies Enter.*, 925 F. Supp. 738, 744 (M.D. Fla. 1996)).

Next, Burke implies he has a private, pre-indictment right to access the agent's affidavit, because he "has a higher interest in disclosure of the affidavit [than the Times Publishing Company]. It was his material seized, and his access to the affidavit is essential to challenge whether the government even was permitted to seek, much less the Magistrate [Judge] had authority to issue, this warrant." (Doc. 25 at 13). Burke contends that "access to the affidavit is essential for [Burke] to challenge the lawfulness of the search under Rule 41(g) F.R. Crim. P. and under *Franks v. Delaware*, 438 U.S. 154, 156, 165-71 (1978)." (*Id.* at 15). He laments, "[w]e still don't know their theory of the crimes alleged." (*Id.* at 13).

As Burke acknowledges, however, "[t]he Eleventh Circuit does not seem to have opined on the question of whether the subject of an investigation has a right, either under the common law, the Fourth Amendment, or Rule 41 F.R.Crim.P. to access [ ] an affidavit in support of a warrant in order to challenge the lawfulness of the warrant, but multiple other courts have found such a right." (Doc. 25 at 13, n.29). In the out-of-jurisdiction cases Burke cites, the pre-indictment private right of access to warrant documents still yields to a compelling government interest (*Id*). *See also In re Search of Up North Plastics, Inc.*, 940 F.Supp. 229, 232 (D. Minn. 1996) (Fourth Amendment right of access to search warrant affidavits may be limited or denied "upon a showing of a compelling government interest that cannot be accommodated by some means less restrictive than sealing the court's records.").

5

The Government has demonstrated to the Court's satisfaction that a compelling need exists to keep the search warrant affidavit under seal. As the Court stated in its prior Order:

> [T]he agent's affidavit details the scope and direction of the Government's investigation, identifies the individual(s) being investigated, references the identities of victim(s), witness(es), and/or co-conspirator(s), and reveals the agent's investigative techniques. Compounding these factors is that the criminal proceeding is pre-indictment – disclosing the contents of the agent's affidavit likely would stymie both the nature of the Government's investigation and how law enforcement is conducting it.

(Doc. 23 at 3). At bottom, the Government's interest in protecting the integrity of its criminal investigation is constitutionally compelling, and unsealing the agent's affidavit would compromise that interest.[1] After careful consideration, the Court once again finds that line-by-line redaction is not practical, and the most narrowly tailored method for safeguarding the Government's compelling interests is to deny Burke's motion to unseal the agent's affidavit.

### III.   Burke's Rule 41(g) Motion for Return of Property

Under Rule 41(g), Burke requests "the immediate return of the contents of his newsroom, including computers, mobile telephones, servers, hard drives, and other electronic devices, and any and all information and data copied, reproduced or retained therefrom[.]" (Doc. 25 at 1). He acknowledges "[t]he government has agreed to return and not retain copies of the hard drives which contain no data related to Mr. Burke's access to and publication of live feeds after August of 2022 – the period mentioned in

---

[1] Burke is not left without recourse. If the Government elects to initiate a criminal proceeding against him, Burke will have an opportunity via Rule 12(b) to file a pretrial motion to dismiss and/or to suppress evidence.

6

Attachment B of the Warrant." (*Id*. at 4-5).[2]  And the Government has also agreed to provide Burke copies of the portions of seized drives that "contain both materials covered and not covered by the Warrant Attachment, but with those materials covered by the Warrant deleted, and with the government retaining the original drives containing the mixed materials." (*Id*. at 5, n. 7).  But, Burke argues, the Government is not working fast enough and casts too wide a net in seizing and retaining the "thousands of live feeds which make up the privileged contents of [his] newsroom." (*Id*. at 5).  Relying on the factors enumerated in *Richey v. Smith*, 515 F.2d 1239, 1243-44 (5th Cir. 1975),[3] Burke contends the Government has "callously disregarded" his First and Fourth Amendment rights in searching and seizing the data on his devices (Doc. 25 at 10).

The United States counters that the Court lacks equitable jurisdiction to decide Burke's motion for return of property, because Burke cannot meet *Richey*'s high bar (Doc. 33 at 21).  Instead of a Rule 41(g) motion, the Government characterizes Burke's motion as an improper pre-indictment motion to suppress (*Id*. at 19).  The Government emphasizes it complied with applicable internal policies in seeking the warrant and is following filter protocols to "prevent the investigative team from unintentionally encountering any potentially privileged or protected communications or materials." (*Id*. at 23).  It cites its proposed stipulation to Burke that outlines a process for returning

---

[2] The Government's investigative team has determined it can return originals or copies of all folders and files that predate midnight on August 22, 2022 (Doc. 33 at 10-11, n. 9).

[3] The Eleventh Circuit has adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.  *See Bonner v. Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

property containing "information falling outside the authority to seize under Attachment B to the warrant, and to eliminate any image of that item in its systems." (*Id*. at 10).[4] But the Government does not propose a deadline for returning this subset of Burke's property.

> Rule 41(g) provides:
>
> A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

Fed. R. Crim. P. 41(g). When no criminal proceedings are pending, motions under Rule 41(g) are considered motions in equity. *See United States v. Howell*, 425 F.3d 971, 974 (11th Cir. 2005); *Hunsucker v. Phinney*, 497 F.2d 29, 34 (5th Cir. 1974). And "[e]xercises of equitable jurisdiction . . . should be 'exceptional' and anomalous.'" *Trump v. United States*, 54 F.4th 689, 694 (11th Cir. 2022) (quoting *Hunsucker*, 497 F.2d at 32). In other words, "[o]nly the narrowest of circumstances permit a district court to invoke equitable jurisdiction." *Id*. at 697.

As the Eleventh Circuit recounts in *Trump*, "'[i]t is a familiar rule that courts of equity do not ordinarily restrain criminal prosecutions.'" *Id*. at 697 (quoting *Douglas v.*

---

[4] Burke did not agree to the stipulation and filed the instant motion instead. Referring to the "Evidence Collected Item Log," produced to Burke in redacted form (*see* Doc. 18-1 at 28-29), the United States asserts in its Response, "[a]s of today, the United States has made available for return to Burke original Item #19 and has produced copies of folders and files contained on Items #7 (partial return), #14, #17 (partial return), #20 (partial return), #21, #22, #23, and #24 (partial return) that predate midnight, August 22, 2022." (Doc. 33 at 11).

*City of Jeannette*, 319 U.S. 157, 163 (1943)).  To avoid interfering with the executive branch's criminal enforcement authority while still "offering relief in rare instances where a gross constitutional violation would otherwise leave the subject of a search without recourse," the Eleventh Circuit follows *Richey*'s "exacting test" for exercising equitable jurisdiction in cases involving the seizure of property.  *Id*.  Under *Richey*, a district court sitting in equity must consider four factors when deciding whether to grant a motion for return of property: (1) whether government agents displayed a "callous disregard" for the plaintiff's constitutional rights; (2) whether the plaintiff "has an individual interest in and need for the material whose return he seeks;" (3) whether the plaintiff would be irreparably injured if the property is not returned; and (4) whether the plaintiff has an adequate remedy at law.  515 F.2d at 1243-44 (quoting *Hunsucker*, 497 F.2d at 34).

    A.    "Callous Disregard"

The first *Richey* factor – whether the plaintiff has shown that the Government "callously disregarded" his constitutional rights – is the most important.  *Trump*, 54 F.4th at 698 (citing *United States v. Chapman*, 559 F.2d 402, 406 (5th Cir. 1977) and emphasizing the "indispensability of an accurate allegation of callous disregard.").  Burke's bread and butter is a collection of live streams he "has painstakingly compiled, organized and indexed." (Doc. 25-2 at 12).  Invoking the First Amendment, he stresses he collected these live feeds lawfully from the public domain and "seizing and refusing to return that which was previously public, in a manner that serves to prevent Mr. Burke and other reporters from reporting on this content is the ultimate 'prior restraint,' using armed FBI agents to prevent publication." (Doc. 25-2 at 10).  Burke also argues he is in the dark about whether

the Government complied with the Privacy Protection Act ("PPA"), 42 U.S.C. § 2000aa, *et seq.*, its implementing regulations, and internal Department of Justice guidelines designed to guard against intrusion into journalists' newsgathering and reporting.

The "chief purpose" of the First Amendment is to prevent "previous restraints on publication." *Near v. Minnesota*, 283 U.S. 697, 713 (1931). Prior restraints are the "most serious and the least tolerable infringement on First Amendment rights" because they are "an immediate and irreversible sanction," not only "chill[ing]" speech but also "freez[ing]" it, at least for a time. *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). Mindful of this constitutional guidepost, the undersigned is tasked with deciding the scope of Burke's First Amendment protections in the context of the Government's execution of a search warrant supported by probable cause.

The Supreme Court addressed the intersection of the First and Fourth Amendments in *Zurcher v. Stanford Daily*, 436 U.S. 547, 566 (1978), which Burke cites to bolster his argument that the Government may not "rummage at large in newspaper files or [ ] intrude into or deter normal editorial and publication decisions." (Doc. 25 at 11, n. 25). In *Zurcher*, the Supreme Court held that the Fourth Amendment's prohibition of unreasonable searches and seizures did not extend to law enforcement's search of Stanford University's newspaper office for photographs depicting students who assaulted police officers during a violent demonstration, even though no newspaper employee was involved in the assaults. 436 U.S at 566. The Supreme Court reasoned: "Properly administered, the preconditions for a warrant – probable cause, specificity with respect to the place to be searched and the things to be seized, and overall reasonableness – should

afford sufficient protection against the harms that are assertedly threatened by warrants for searching newspaper offices." *Id*. at 565.

Enter the PPA, which Congress enacted in 1980 in response to *Zurcher* to afford members of the press not suspected of committing a crime with protections besides those provided by the Fourth Amendment. *See Sennett v. United States*, 667 F.3d 531, 535 (4th Cir. 2012).[5] The PPA prohibits the government from seizing "work product materials" intended for publication. *See* 42 U.S.C. § 2000aa(a). Work product materials are materials the author intends to communicate to the public that contain the authors' impressions, opinions, conclusions, or theories. *See* 42 U.S.C. § 2000aa-7(b). The act also bars seizure of "documentary materials," including photographs, films, or tapes. *See* 42 U.S.C. §§ 2000aa(b) & 2000aa-7(a). Excluded from the PPA's definitions of "documentary materials" and "work product materials" is "contraband or the fruits of a crime or things otherwise criminally possessed." 42 U.S.C. § 2000aa-7.

Under the so-called "suspect exception" to the PPA, "[t]he police can avoid the constraints of the act . . . when the person possessing the materials is a criminal suspect rather than an innocent third party." *Guest v. Leis*, 255 F.3d 325, 341 (6th Cir. 2001); *see* 42 U.S.C. §§ 2000aa(a)(1) & (2); 2000aa(b)(1)-(4). To take advantage of this exception,

---

[5] In *Henriquez v. Georgia Department of Revenue*, No. 21-12567, 2023 WL 4624473, at *9 (11th Cir. July 19, 2023), the Eleventh Circuit explained: "The PPA is obviously addressing the interaction of the First and Fourth Amendments in connection with searches conducted during a criminal investigation that could well satisfy the Fourth Amendment's requirement that all governmental searches and seizures of an individual's property be reasonable, but that might, at the same time, implicate a putative publisher's First Amendment interest in not having those materials seized absent probable cause to believe that the latter has some connection to the crime being investigated."

11

the government must have "probable cause to believe that the person possessing such materials has committed or is committing the criminal offense to which the materials relate." 42 U.S.C. §§ 2000aa(a)(1) & (b)(1). [6]

Burke devotes much of his argument to explaining why he believes his conduct was not criminal. Under the heading "There Was No Crime. The CFAA & Electronic Communications Act Cannot Be Read To Criminalize Routine Newsgathering from the Internet[,]" Burke argues at length he did not commit a crime because he did not hack into Fox News or the streaming platform's systems to gain access to the livestream, he obtained credentials through legal investigative techniques he has developed and refined over his journalism career (Doc. 25 at 15-20). He stresses that the search and seizure of his "Newsroom [was] based on a novel and unsupported interpretation of the CFAA and wiretap laws[.]" (Doc. 25 at 9).

Burke's brief – while well-researched and copiously footnoted – does not explicitly explain how his challenge to the Government's interpretation of these criminal statutes

---

[6] The Attorney General has promulgated internal guidelines addressing when prosecutors need to secure authorization for search warrants that may implicate the PPA. *See* 28 C.F.R. § 50.10(i)(1) (the "News Media Policy"). The News Media Policy "is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person." 28 U.S.C. § 50.10(t). The policy "is of the kind to be enforced internally by a governmental department, and not by courts through exclusion of evidence." *In re Shain*, 978 F.2d 850, 853 (4th Cir. 1992). Here, the Government represents it "has fully complied with all aspects of its own PPA policy and its News Media Policy during the ongoing investigation." (Doc. 33 at 13). Additionally, the News Media Policy is "not intended to shield from accountability members of the news media who are subjects or targets of a criminal investigation for conduct outside the scope of newsgathering." 28 C.F.R. § 50.10(a)(1). "Newsgathering" does not include unlawfully accessing a computer system or wiretapping. 28 C.F.R. § 50.10(b)(2)(ii)(B).

fits in the context of his pre-indictment motion for return of property. It appears Burke is suggesting that if there was no underlying crime, the First Amendment and/or the PPA prohibited the Government from searching and seizing Burke's materials. Thus, according to Burke, the Government showed "callous disregard" for his First Amendment rights.

While it should be emphasized that Burke has not been charged with a crime, the Government has established probable cause to believe that Burke's home contained the fruits, instrumentalities and/or evidence of violations of 18 U.S.C. § 1030 and 18 U.S.C. § 2511. In other words, the items the Government is authorized to seize under the warrant do not qualify as protected work product or documentary materials under the PPA because they are contraband or fruits of the crime under investigation. Any PPA materials[7] that may exist on the seized devices were commingled with criminal evidence on computers owned or operated by Burke, the subject of a criminal investigation. Burke has not demonstrated the indispensable element of "callous disregard" of his constitutional rights.

### B.  Remaining *Richey* Factors

Although neither Burke nor the United States addresses the three remaining *Richey* factors in detail, the Court finds it prudent to discuss them. The second *Richey* factor is "whether the plaintiff has an individual interest in and need for the material whose return

---

[7] Although Burke identifies no specific PPA materials, the Court assumes without deciding that there are PPA-protected materials on some of Burke's devices the Government seized. But the Government represents it is working with a taint team to prevent its investigative team from unwittingly searching privileged or protected information (Doc. 33 at 23).

he seeks." 515 F.2d at 1243. Burke states "[h]is media clients rely on the tools he has built, which exist solely in the hardware and backup drives currently in the possession of the FBI." (Doc. 25 at 7). As explained in *Trump*, however, "the relevant inquiry is if *he* needs the documents." 54 F.4th 689, 699 (emphasis in original). Regarding his individual need for the seized materials, Burke says "his career and his reporting are inseparable from the hardware and intellectual property seized by the government." (Doc. 25 at 7). And "[t]he tools he's developed and shared with reporting partners have produced some of the most-seen viral news videos of all time." (*Id.*). But Burke does not identify specific seized materials he needs. "Courts that have authorized equitable jurisdiction have emphasized the importance of identifying 'specific' documents and explaining the harm from their 'seizure and retention.'" *Trump*, 54 F.4th at 699 (quoting *Harbor Healthcare Sys., L.P. v. United States*, 5 F.4th 593, 600 (5th Cir. 2021)). The second *Richey* factor favors the Government.

The third *Richey* factor is whether Burke would be irreparably injured if his property is not returned. This "refers to circumstances in which a Rule 41[g] movant cannot wait for a legal remedy, thus justifying the court's equitable jurisdiction." *Bennett v. United States*, No. 12-61499-CIV, 2013 WL 3821625, at *14 (S.D. Fla. July 23, 2013) (citation and quotation omitted). According to Burke, he "is a 'person who finds things' on the Internet. What he is not, however, is a criminal." (Doc. 25 at 8). Although the threat of federal prosecution no doubt weighs heavily on him, it does not constitute irreparable harm. *United States v. Search of Law Office, Residence, and Storage Unit Alan Brown*, 341 F.3d 404, 415 (5th Cir. 2003); *see also Trump*, 54 F.4th at 700 ("without diminishing the

seriousness of the burden [of indictment], that ordinary experience cannot support extraordinary jurisdiction.").

Instead, for irreparable injury, courts "focus on the harmful effects the loss of the property wreaks on the movant." *Alan Brown*, 341 F.3d at 415. To this point, Burke states, "[h]e has been unable to report news or service his clients' reporting since the search warrant was executed; both his journalism career and his business have been brought to a complete standstill and he is unable to earn a living[.]" (Doc. 25 at 7). Burke has not explained why he cannot continue to report news or otherwise work as a journalist without the seized items, however, especially considering his reputation as someone highly skilled at locating information online. Regarding seized materials within the scope of the warrant, the Court borrows the reasoning of *Trump*: "[I]t cannot be that prosecutors reading unprivileged documents seized pursuant to a lawful warrant constitutes irreparable injury for purposes of asserting equitable jurisdiction. Here too, Plaintiff's argument would apply to nearly every subject of a search warrant." 54 F.4th at 700.

*Richey*'s final consideration is whether the plaintiff "has an adequate remedy at law for the redress of his grievance." 515 F.2d at 1244. "An adequate remedy at law may exist even if it cannot be asserted currently, but rather only at some future date." *In re Stanford*, 68 F.Supp.2d 1352, 1356 (N.D. Ga. 1999); *see also Hunsucker*, 497 F.2d at 34 (holding that where, at the time of bringing a motion for return of property, "it appeared likely that a future proceeding would be available in which [movant] could vindicate his rights," there was an adequate remedy at law). Here, an adequate remedy exists: a motion to suppress under Rule 12, which Burke – should he be indicted – may bring to contest the

constitutionality of the search warrant. Or, if he is not charged, he may move again for the return of his property. The PPA also has a civil remedies provision that permits "[a] person aggrieved by a search for or seizure of materials" in violation of the statute to bring a cause of action for damages against the United States. 42 U.S.C. § 2000aa-6(a).

No *Richey* factor weighs in Burke's favor. The Court declines to exercise equitable jurisdiction to order the return of Burke's seized property.

### IV. Completion of Review

While Rule 41(e)(2)(B) authorizes the seizure, and later review, of electronically stored media, "[i]t was not the intent of the [rule] to leave the property owner without an expectation of the timing for return of the property, excluding contraband or instrumentalities of crime. . ." Fed. R. Crim. P. 41, advisory committee notes to 2009 Amendments. The Court recognizes that a "substantial amount of time can be involved in the forensic imaging and review of information. . . due to the sheer size of the storage capacity of the media, difficulties created by encryption and booby traps, and the workload of the computer labs." *Id.*

Here, according to Burke, over 100 terabytes of data were seized (Doc. 25 at 4). Reviewing such voluminous information is a lengthy process – one undoubtedly prolonged by the protocols the Government has put in place to ensure protected information stays that way. While the Government is entitled to a reasonable amount of time to review the seized materials, the time afforded to the Government is not unlimited. The Court recognizes that at some point not yet reached, the delay may become unreasonable and constitute "callous disregard" of Burke's rights.

With this in mind, the Court directs the Government, within seven (7) days of this Order, to propose a reasonable schedule for the return of copies or originals of all seized materials except those "Particular Things to be Seized" as set forth in Attachment B to the Search Warrant (Doc. 18-1 at 7-11).

Accordingly, the Court **ORDERS**:

(1) Timothy Burke's Motion to Unseal Sworn Affidavit and for Return of Property Under Rule 41(g) (Doc. 25) is **DENIED without prejudice**.

(2) Within seven (7) days of this Order, the Government shall file a proposed reasonable schedule for the return to Burke of copies or originals of all seized materials except those "Particular Things to be Seized" as set forth in Attachment B to the Search Warrant.

**ORDERED** in Tampa, Florida, on September 22, 2023.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE