UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TIMES PUBLISHING COMPANY,

    Plaintiff,

v.

                             CASE NO. 8:23-mc-00014-WFJ-SPF
                                           8:23-mj-1541-SPF

UNITED STATES OF AMERICA,

    Defendant.

**UNITED STATES OF AMERICA'S STATUS REPORT AND
PROPOSED SCHEDULE FOR THE RETURN TO BURKE
OF COPIES OR ORIGINALS OF SEIZED PROPERTY**

The United States, pursuant to this Court's Order, Doc. 35, hereby submits a status report and proposed reasonable schedule for the return to Timothy Burke of copies or originals of all seized materials, except those "Particular Things to be Seized" as set forth in Attachment B to the pertinent search warrant.

**I.    RELEVANT BACKGROUND**

A. The Search and Seizures

On May 4, 2023, this Court found probable cause supported the United States' application for a warrant to search Timothy Burke's address for records and evidence relating to violations of 18 U.S.C. § 1030 (intentional unauthorized access of a computer), and 18 U.S.C. § 2511 (intentional interception and disclosure of wire, oral, or electronic communication), and issued the pertinent warrant.[1]  The

---

[1] The warrant as issued was styled *In the Matter of the Search of Premises Located at [XXXX] N. Tampa*

application for that warrant specified the bases for the search as seeking: (1) evidence of a crime; (2) contraband, fruits of a crime, or other items illegally possessed; and (3) property designed for use, intended for use, or used in committing a crime. Doc. 18-1 at 13. Attachment B to the warrant specified the "Particular Things to be Seized" as all records and other evidence related to violations of 18 U.S.C. §§ 1030 and 2511, involving Timothy Burke and occurring after August 1, 2022.[2] Doc. 18-1 at 2-11.

FBI agents executed the warrant at the Burke address on May 8, 2023. Doc. 18-1 at 26-27. In the secondary suite behind the primary residence, the agents located a workspace that contained hundreds of items that qualified as either a computer or storage medium, as described in Attachment B to the warrant. The search team left with approximately two dozen electronic devices and two hard copy items, which are particularized in the Evidence Collected Item Log ("Evidence Log"),[3] filed with this Court as part of the warrant return. Doc. 18-1 at 28-29. Subsequent legal process in September 2023 extended back the date scope of the original warrant, allowing the investigative team to conduct its search and seizures of items then in the possession of the FBI to records and evidence relating

---

*St.*, No. 8:23-mj-1541-SPF. A redacted copy of the warrant, Attachments A and B, and related documents were later filed as a composite exhibit in this case. *See* Doc. 18-1.

[2] Attachment B included six paragraphs that described certain categories of evidence and/or contraband or fruits of the crimes under investigation.

[3] Each item identified in the Evidence Log is identified here by its Item #__ (e.g., Item #1).

to violations of 18 U.S.C. § 1030, involving Burke and occurring after February 20, 2022, at 12 am UTC, up and through midnight, August 2, 2022.[4]

    B.  Burke's Motion and United States' Response in Opposition

On July 21, 2023, Burke filed a motion requesting that this Court: (1) unseal the probable cause affidavit submitted in support of the warrant (the "PC Affidavit") executed at his address, and (2) order the United States to return to Burke all of the items seized from his address, along with any copies of information and data therefrom. Doc. 25 (herein, "Burke's motion"). The United States responded in opposition to Burke's motion, explaining, in part, that the PC Affidavit must remain sealed to protect and safeguard the integrity of an ongoing federal criminal investigation, the safety and security of law enforcement personnel, the privacy of unnamed and uncharged subjects of the investigation, and the privacy of third-party fact witnesses and potential victims. Doc. 33 at 1-2, 4-6, 16-19. The United States further explained that this Court should dismiss for lack of jurisdiction the second aspect of Burke's motion, that being Burke's request for an order directing the United States to return all property seized pursuant to the search warrant. *Id*.

---

[4] For clarity, the United States refers herein to the date range authorized by the warrant for search and seizures as beginning on February 20, 2022, at midnight (UTC), except where specified.

> C. Order Denying Without Prejudice Burke's Motion and for United States to File a Proposed Schedule for Return of Property

On September 22, 2023, this Court entered an Order denying without prejudice Burke's motion to unseal the PC Affidavit and for return of property. Doc. 35. Pertinent here, the Court explained in its Order (internal citations and quotations omitted):

> The Court recognizes that a substantial amount of time can be involved in the forensic imaging and review of information. . . due to the sheer size of the storage capacity of the media, difficulties created by encryption and booby traps, and the workload of the computer labs.
>
> Here, according to Burke, over 100 terabytes of data were seized. Reviewing such voluminous information is a lengthy process – one undoubtedly prolonged by the protocols the Government has put in place to ensure protected information stays that way. While the Government is entitled to a reasonable amount of time to review the seized materials, the time afforded to the Government is not unlimited. The Court recognizes that at some point not yet reached, the delay may become unreasonable and constitute "callous disregard" of Burke's rights.

*Id*. at 16. This Court then directed the United States to file a proposed reasonable schedule for the return to Burke of copies or originals of all seized materials, except those "Particular Things to be Seized" as set forth in Attachment B to the warrant. *Id*. at 17.

> II. **STATUS REPORT AND PROPOSED SCHEDULE FOR RETURN OF COPIES OR ORIGINALS**

A. Property Returned to Date

The United States acknowledged in its response to Burke's motion that the United States has a standing obligation to return to Burke any item seized from the Burke address that is determined to contain only information falling outside the

4

authority to seize under Attachment B to the warrant, and to eliminate any image of that item in its systems. Doc. 33 at 10-11. The United States further explained therein that, as to any seized items that contain a mix of information falling inside and outside the authority to seize under Attachment B, the United States will produce to Burke copies of all folders and files contained in the items, withholding only those files that fall within the authority to seize that constitute contraband or fruits of the identified crimes.

Pursuant to that effort, the United States is first segregating the folders/files that predate midnight, February 20, 2022,[5] downloading copies of those folders/files onto drives provided by Burke (without review by the United States other than for production purposes), and producing the copies to Burke.[6] Folders/files dated midnight or after that date have been (or are being) subjected to an internal filter review, after which approved nonprivileged and otherwise unprotected folders/files have been (or will be) made available to the investigative

---

[5] As explained above, subsequent legal process extended back the date scope of the original warrant for violations of 18 U.S.C. § 1030 to February 20, 2022, at 12 am UTC. Thus, while the United States was originally segregating the folder/files that predate midnight, August 22, 2022, *see* Doc. 33 at n.9, the operative date in most instances going forward will be February 20, 2022.

[6] In an effort to expedite the process and to guard against inadvertently reviewing privileged or protected information or communications, the United States has repeatedly expressed to Burke's counsel—as recently as August 23, 2023—that the United States continues to welcome any input or information that counsel cares to provide concerning any material (in any format) believed to constitute Burke's work-product materials or other documentary materials, as defined under the Privacy Protection Act ("PPA"), or that might be subject to any other privilege, including the attorney-client privilege, attorney work-product privilege, marital privilege, and/or journalist privilege.

team for its review and continued rolling production to Burke of all folders/files that do not constitute contraband or fruits of the identified crimes.[7]

To that end, on July 27, 2023, the undersigned notified Burke's counsel that the initial return of property had been loaded onto one of the drives provided and was available for retrieval. That return involved the production to Burke of three websites: burke-communications.com, mocksession.com, and a website associated with Burke's spouse. Approximately six weeks later, on Monday, September 11th, the United States received a letter from Burke's counsel that explained the websites returned to Burke in July were not functional. The United States' investigative team held a series of meetings that same week to address the issue and, on Thursday, September 14th, the United States sent a zip folder to Burke's counsel that contained four additional files to resolve the problem.[8] The September 11th letter from Burke's counsel also raised other issues with some of the returned folders/files that rendered them unusable by Burke and, fortunately, provided some actionable information to the United States about the various issues. It is understood by the undersigned that the United States has now addressed and

---

[7] As of the date of this filing, the investigative team has received approved filtered folders/files originally located on Items #5, # 6, #7 (partial), #8 (partial), 14, 15, 16, 17, 20, 21, 22, and 23. Thus, these folders/files have been (or are being) reviewed by the investigative team for production to Burke, as explained below.

[8] As of the date of this filing, the United States has heard nothing suggesting that the problem was not resolved.

resolved most of the technical issues raised and that the folders/files being produced to Burke are accessible and usable.

As of the date of this filing, the United States has returned to Burke original Items #2, #17, #19, #21, #22, and #23, and has eliminated (or will be eliminating) any images of those items from government systems. The United States has also produced to Burke copies of folders/files contained on Items #3, #4, #5, #6, #7 (partial), #8 (partial), #9, #12, #14, #20, and #24 (partial) that predate midnight, February 20 or August 22, 2022, as authorized. Moreover, the United States stands prepared to produce copies of additional folders/files once it receives one or more hard drive(s) from Burke's counsel.[9] Additional detail about the United States' rolling productions of folders/files to Burke is contained in Attachment A.

B.  Proposed Schedule: Files that Postdate February 20, 2022

This Court recognized in its Order some of the challenges attendant to the forensic imaging and review of electronic information in this case—the processing of 100 terabytes of data, the workload of the investigative agency computer lab, and protocols established by the United States to guard against inadvertent review of privileged or protected information or communications. Doc. 35 at 2 and 16. That challenge cannot be overstated. For example, to

---

[9] The United States has sent an email to Burke's counsel that: (1) identifies specific material (by item) that has now been processed and is available and (2) includes an estimate of the storage capacity requirements for production of that material. *See*, e.g., Attachment A at Item #7 regarding "One (1) black rackmount PC on table—RAID," referred to herein as the "Item #7 RAID."

process and prepare the Item #7 RAID[10]—containing approximately 8.4 terabytes[11] of target data (folders/files that predate midnight, February 20, 2022)—for production to Burke, the investigative team pursued the following five-step process. First, the team individually imaged eight hard drives that compose the Item #7 RAID. Second, one logical image was created from the material originally residing on the eight drives (that composed the RAID). Third, the new logical image was converted to a forensic-tool-compatible format, which required approximately three days of computation time. Fourth, the material, now properly converted, was processed within the forensic-tool software. Fifth, the processed material will now be exported to a 10-terabyte drive provided by Burke's counsel. Of course, the speed with which the United States is able to download copies of the relevant folders/files to drives for production to Burke's counsel is somewhat contingent upon how quickly counsel returns the drives to the United States after retrieving them for Burke to download. In that regard, the United States is working with Burke's counsel to coordinate the ongoing exchange of drives containing the downloaded folders/files.

As discussed above and reflected in Attachment A, six original items have been returned to Burke and a material portion of the folders/files that predate

---

[10] Generally, RAID is a data storage virtualization technology that combines more than one physical disk drive components into one or more logical units for the purposes of data redundancy, performance improvement, or both.

[11] One terabyte of stored video is roughly equivalent to approximately 250 2-hour movies or 86 million Word documents.

midnight February 20, 2022, have systematically been processed, copied, and produced (or are available for production but awaiting download to a Burke-owned drive). In conjunction with that effort, the investigative team is now also intaking filtered folders/files that postdate midnight February 20 or August 22, 2022, as authorized, and reviewing same to identify and extract folders/files that qualify as "Particular Things to be Seized," as set forth in Attachment B to the relevant warrant.

As that effort proceeds, the United States will continue to work expeditiously and in good faith to produce to Burke copies (or originals, if appropriate) of the remaining folders/files. It is presently estimated that the remaining review-and-production effort can be accomplished within approximately ten weeks from the date of this filing, which the United States submits is a reasonable period, given the volume of information and the resulting challenges presented. In addition, with this Court's permission, the United States will submit status reports to the Court on October 20th, November 10th, and

November 24th, 2023, updating this Court about the United States' progress and any related issues.

                                Respectfully submitted,

                                ROGER B. HANDBERG
                                United States Attorney

By:  */s/Jay G. Trezevant*
      Jay G. Trezevant
      Assistant United States Attorney
      Florida Bar No. 0802093
      400 N. Tampa Street, Suite 3200
      Tampa, Florida 33602-4798
      Telephone:  (813) 274-6000
      Facsimile:   (813) 274-6358
      E-mail: jay.trezevant@usdoj.gov

**Times Publishing Company v. U.S.**     Case No. 8:23-mc-00014-WFJ-SPF

## CERTIFICATE OF SERVICE

I hereby certify that on September 29, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

    Michael Maddux, Esq.

    Mark Rasch, Esq.

    Jon M. Philipson, Esq.

                                          */s/ Jay G. Trezevant*
                                          Jay G. Trezevant
                                          Assistant United States Attorney