UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TIMOTHY BURKE

v.                              CASE NO.   8:23-mc-00014-WFJ-SPF
                                           8:23-mj-1541-SPF

UNITED STATES OF AMERICA
_____/

**AMENDED***
**MOTION FOR RECONSIDERATION & OBJECTIONS TO
REPORT & RECOMMENDATION OF MAGISTRATE JUDGE (Doc.35)
ON MOVANT'S MOTION PURSUANT TO F.R.Cr.P. 41(g)**
*(Amended as to Exhibit attachments only)*

Timothy Burke, a digital video journalist, moved pursuant to F.R.Cr.P. 41(g) for the return of his property seized by the FBI on May 8, 2023, under the authority of a search warrant that claimed probable cause to believe he had engaged in certain cyber crimes and wiretapping law violations. The property seized constituted the entire contents of his newsroom, including virtually all of his electronic computer equipment and his entire video archives which represent his journalistic work product, and from which Burke has reported and seeks to continue reporting newsworthy items of public interest.

Since May 8, 2023, the government has returned some copies of digital data and information, most of which is useless to Burke in its returned and copied format, and some isolated pieces of his equipment, but they have refused to return any of Burke's video archives claiming that the hundreds or perhaps thousands of hours of his recorded video live streams are "contraband" in the nature of "stolen property." The Magistrate Judge determined that the government should be allowed a "reasonable time" to review and copy Burke's seized materials, and to return only those items that fall outside the terms of the search warrant(s), (Doc. 35, p. 17) but the Magistrate Judge made no factual findings and issued no Order as to the return of the "Particular Things to be Seized" as set forth in Attachment B to the warrant, which includes the live streams, other than that there was probable cause for their seizure. In other words, pursuant to the Order of Sept. 23, 2023, the government is currently permitted to withhold *indefinitely* all those files, data, videos, and information that fall within the authority to seize that the government alleges "constitute contraband or fruits of the identified crimes." It is to this indefinite prior restraint on his First Amendment right to report and publish newsworthy information from his video archives that Burke most strenuously objects.

Most significantly, the Court failed to hold an evidentiary hearing on the impact of the allegedly unlawful seizure and continued retention of protected materials on Mr. Burke's constitutionally protected right to publish and the prior restraint upon such publication, and the extent to which the government complied with statutory and regulatory restrictions on searches and seizures of journalistic materials designed to minimize the impact of such searches and seizures.

Mr. Burke objected to the seizures on numerous grounds, but, fundamentally, the question for reconsideration is whether the equitable provisions of Rule 41(g) provide any effective remedy when the government seizes a newsroom and prevents a journalist from accessing his work product and publishing newsworthy information in the absence of a grand jury's finding of probable cause to believe the journalist engaged in criminal activity with respect to his work product, and without any factual findings that the journalist's work product is indeed the fruit of that criminal activity.

In seeking their warrant, the government alleged that Burke violated 18 U.S.C. § 1030 (intentional unauthorized access of a computer), and 18 U.S.C. § 2511 (intentional interception and disclosure of wire, oral, or electronic communication). Relying on the factors enumerated in *Richey v.*

*Smith*, 515 F.2d 1239, 1243-44 (5th Cir. 1975)[1], the Magistrate Judge held that his own finding of "probable cause to search and seize" was sufficient to presume that the items seized were the "fruits or instrumentalities of crime," and that therefore the remedy of suppression would eventually be available to vindicate Burke's rights.[2] But, respectfully, the Magistrate Judge's finding of probable cause to search, based solely on an *ex-parte*, under seal filing by the government, effectively shielded from the crucible of examination envisioned by *Franks v. Delaware*, 438 U.S. 154 (1978) cannot substitute for a grand jury's finding of probable cause to charge Burke with a crime, which is a prerequisite to the availability of a motion to suppress. Burke has not been charged with any crime. He may never be charged with a crime. He committed no crime. The harm to Mr. Burke and to the public results not from being wrongfully charged with a crime, but from being prevented from publishing lawfully acquired materials. The remedy for this harm is proscribed by law -- and it is an immediate return of the journalist's

---

[1] The Eleventh Circuit has adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981. See B*onner v. Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

[2] *Richey* involved a motion for return of seized tax returns, and there was no assertion of an infringement of a constitutional right other than that in the Fourth Amendment, based on the seizure and holding of the documents. Subsequently, in *Trump v. United States*, 54 F.4th 689 (11th Cir. 2022) the Eleventh Circuit refused to grant equitable relief compelling the appointment of a Special Master to review seized materials based on some claim of special right by the former President.

materials. Under the holding of the Magistrate Judge, these materials may never be published - because they are either evidentiary, contraband, or an instrumentality -- an ex parte under seal determination that is permanently unreviewable. The denial of equitable relief under Rule 41(g) cannot therefore be predicated on the assumption of a remedy that may never come to pass. Indeed, the equitable remedy under Rule 41(g) is available precisely because no other remedy may ever be availing.

Rule 41(g) is available in the pre-indictment context, it also provides that "[t]he court *must* receive evidence on any factual issue necessary to decide the motion." (emphasis added) Burke requested a hearing on his Rule 41(g) motion (Doc. 26) but he was not permitted to present any evidence to the Court, including evidence that would have established that (1) his access to the subject video content was not without authorization as a matter of law, (2) did not constitute an illegal interception; and (3) the materials covered by the warrant included proposed reportage on matters of time-sensitive issues of political and national sensitivity relevant to ongoing criminal and civil litigation. Since these questions go to the very essence of the government's allegation and the court's finding of probable cause that Burke's live streams are the instrumentalities of a crime, and to the *Richey* factors previously

referenced, and since they are factual questions in dispute, Burke should have been allowed a timely evidentiary hearing.

As further support of the need for a hearing, even Burke's status as a journalist, and whether he was entitled to the protections of the Privacy Protection Act, DOJ regulations, and the Florida journalist shield law was disputed by the government. Despite the dispute of facts, no evidentiary finding was made by the Magistrate Judge on this issue, although the Court apparently presumes that a finding of probable cause that the items seized are fruits of a crime supersedes any journalist protections under the law. In the absence of any criminal charges to be tried, Burke is still entitled to due process, and he must be granted the opportunity to challenge the government's allegations and present evidence on these factual disputes at a timely hearing on his motion for the return of his property.

The Magistrate Judge also ordered the government to file a proposed reasonable schedule for the return to Burke of copies or originals of all seized materials *except* those "Particular Things to be Seized" as set forth in Attachment B to the Search Warrant. (Doc. 33. P. 17). On September 29, 2023, the government filed its report (Doc. 37) and estimated that "the remaining review-and-production effort can be accomplished within approximately

ten weeks from the date of this filing," or to a date sometime in mid-December, 2023. By then, the government will have held improperly seized and held some of Burke's property which was always outside the scope of the warrant(s) for almost eight (8) months, and under the current Order of the Court, they will be permitted to continue to withhold Burke's journalistic work product, i.e. his video live streams, for the foreseeable future, without any opportunity to challenge their actions.[3] This time frame is simply too long, and the absence of any temporal restrictions on the government's withholding of the seized livestream videos is unreasonable and evidences a "callous disregard" of Burke's constitutional rights.

Illustrative is *United States v. Account Services, Inc. et al.* (hereinafter ASI), Dkt. No. 94-2182 (11th Cir., August 10, 1994)(Unpublished, copy attached as Exhibit "A"), where the government simultaneously obtained an *ex parte* civil injunction and a criminal search warrant authorizing the seizure

---

[3] In theory, the government can retain the seized items at least until the expiration of the Statutes of Limitations for the offenses covered by the warrant - five years from the date of the alleged offense, but there is no legal requirement that the materials be returned even thereafter. The Department of Justice Manual, Section 9-14.002 presumes that seized materials that are no longer required for investigation are to be disposed of after "two years have elapsed since the expiration of the limitation period..." and contains no express provision for the return of these items to the owner - even in cases where the government does not attempt forfeiture of the items. Even if the materials are returned, DOJ policy requires that the materials "must be photographed, copied, recorded, or otherwise documented before it is returned to its owner." DOJ Manual, Section 9-14.009. Indeed, the remedy available to Mr. Burke even after the expiration of the Statute of Limitations is the same as the remedy available now - a motion for return of materials under Rule 41(g).

of the defendants' computers and data for alleged violations of the mail and wire fraud statutes. The then Magistrate Judge Charles R. Wilson, and on reconsideration, MDFL Judge, Hon. Susan C. Bucklew both found that the government had acted in "callous disregard" of ASI's right to access its own computer equipment and to copy its own data, and found an egregious Constitutional violation by not returning the seized hardware and copied materials to ASI in a timely fashion to permit them to contest the injunction, further noting that the subjects of the search "are virtually shut down without the materials" and that it was egregious that the government "*has been in possession of the property for nearly **one month***" in a way that cost the victims of the seizure "business opportunities and the goodwill of their employees and clients, potentially forcing them out of business." (Report & Recommendation dated Feb. 9, 1994, Case No. 94-46-CIV-T-24A, Dkt 101 and Order of Hon. Susan C. Bucklew dated Feb. 18, 1994, Dkt 119, both attached as Exhibit "B" and Exhibit "C") The Eleventh Circuit Court of Appeals not only affirmed the finding of the egregious constitutional violation and government misconduct, but it ordered the United States Attorney's Office in Tampa to pay the costs of the appeal. (Bill of Costs against Appellees USA, dated Oct. 20, 1994, USDC Dkt. 278, US 11th Cir. CoA 94-2182, attached as

Exhibit "D" and Exhibit "E").

Here, if anything, Mr. Burke's case is even more egregious. Not only did the seizures - both of materials covered by the warrant and those outside its scope - effectively shut down Burke's journalism business, but they also shut down his First Amendment-protected activities. They prevent him from publishing any of the contents of the seized video livestreams, which are his journalistic work product and his livelihood. To the extent that the livestreams contain newsworthy information, the value of that information diminishes as time goes by and the news becomes stale. The government has seized and failed to return his virtual printing press, newsroom, and publication and distribution center. They have seized the **only** extant copies [4] of newsworthy video data about which Mr. Burke intended to (and still intends to) publish - information that is time-sensitive and relevant to ongoing legal and political activities in the news. Without access to his video livestreams, he cannot report on certain matters. All of this acts as an

---

[4] Significantly, the "live streams" Mr. Burke downloaded from the publicly accessible website were likely not retained by the broadcaster. Thus, absent his downloading, capture, and storage of these materials on his hard drive, there would be no other evidence of, for example, statements and unbroadcast opinions of Fox News personnel on issues related to the election, politics, and other newsworthy content. It may be to prevent these materials from seeing the light of day that the government seized and continues to retain this information, but irrespective of the government's motive, the warrant has had this practical effect.

unconstitutional prior restraint on speech in violation of the First Amendment.

The Court held that a finding of probable cause, based on an *ex parte*, sealed, and unreviewable affidavit, means that a journalist is prohibited from reporting newsworthy information because "the items the Government is authorized to seize under the warrant do not qualify as protected work product or documentary materials under the PPA because they are contraband or the fruits of the crime under investigation." (Doc. 35 p. 13). The Court reasons that the remedy for the prior restraint on publication is not return of the materials as provided by Rule 41(g), but rather the later suppression of their use as evidence in some future hypothetical criminal prosecution.  Suppression of evidence is not a remedy for prior restraint - the remedy is that proscribed by law -- the return of the seized materials or, at a minimum, the return of copies of the seized materials so that the newsworthy information can be published. Indeed, suppression of information is antithetical to the role of a journalist and to the goals of the First Amendment. The publication of newsworthy information from Burke's video live streams (which are not alleged to contain any dangerous information, government secrets, or national security matters,) even where

the information obtained IS the fruit of an unlawful computer intrusion (and here, we emphasize it is not,) does not in any way preclude the government from pursuing a prosecution, nor does publication prejudice its hypothetical criminal case in any way. [5] The newsworthy materials on Mr. Burke's hard drives - journalistic in nature - may never see the light of day because the government asserts that the download of this material from a public website using a published credential was not "authorized." At a minimum, he deserves a hearing to show that the government is wrong, and be permitted to publish.

For all the foregoing reasons, we respectfully request the return of Burke's property, including but not limited to his video live streams which the government alleges are "contraband," or the return of copies of the live streams, along with all other information, data, video, and equipment seized from Burke pursuant to the search warrants issued by the court.

---

[5] The government is not without a remedy here. Rule 41(g) provides that the Court may order the return of all items to Mr. Burke with a requirement that he preserve and not alter such information, and the government may then subpoena this material under Rule 6(e) or Rule 17(c). Mr. Burke could then assert - and the Court adjudicate - the application of journalistic and other privileges designed to limit the intrusion on the First Amendment.

Respectfully submitted,

*/s/Michael P. Maddux*
Michael P. Maddux, Esquire
Michael P. Maddux, P.A.
2102 West Cleveland Street
Tampa, Florida 32606
Email: mmaddux@madduxattorneys.com
Phone: (813) 253-3363
Fax: (813) 253-2553


_____
Mark D. Rasch
Law Office of Mark Rasch
Member, MD, MA, NY Bar
MDRasch@gmail.com
(301) 547-6925
*Pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on **October 9, 2023**, a true and correct copy of the foregoing document is being electronically filed and will be furnished via CM/ECF to: Jay Trezevant, Esq. U.S. Attorney's Office Middle District of Florida Tampa Division 400 North Tampa Street Suite 3200 Tampa, FL 33602 at jay.trezevant@usdoj.gov.

                                                       */s/Michael P. Maddux*
                                                       Michael P. Maddux, Esquire