UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TIMOTHY BURKE

v.                                    CASE NO. 8:23-mc-00014-WFJ-SPF

UNITED STATES OF AMERICA

## UNITED STATES OF AMERICA'S RESPONSE IN OPPOSITION TO BURKE'S MOTION FOR RECONSIDERATION AND OBJECTIONS TO REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

The United States opposes Timothy Burke's *Motion for Reconsideration and Objections to Report and Recommendation of Magistrate Judge on Movant's Motion Pursuant to Fed. R. Crim. P. 41(g)* ("Burke's Objections"). Docs. 38 and 39.[1]

## I.      INTRODUCTION

In May 2023, the Honorable Sean P. Flynn, United States Magistrate Judge, found probable cause supported the United States' application for a warrant to search Burke's home address. FBI agents executed that warrant and seized approximately two dozen electronic devices, some of which contain fruits of specified crimes and contraband. Burke later filed a motion seeking, in part, the return of all items and information seized from that location ("Burke's Motion"), and he sought a hearing on that motion. Docs. 25 and 26. Following a response by the United States, and upon consideration of the underlying case filings, the

---

[1] Burke filed his motion on October 6, 2023, and filed an amended motion several days later. Docs. 38 and 39. The amended motion contained the same contents but added exhibits. For clarity, both Docs. 38 and 39 are collectively referred to herein as Burke's Objections and cited as Doc. 39.

magistrate judge entered an order denying Burke's Motion without prejudice. Doc. 35. The magistrate judge also denied Burke's request for a hearing, specifically noting that there were no disputed material facts necessary to the decision of the motion. Doc. 36.

Burke's Objections, Doc. 39, complain that: (1) the magistrate judge's finding of probable cause to believe that Burke's home address contained the fruits, instrumentalities and/or evidence of violations of 18 U.S.C. §§ 1030 and 2511 was insufficient under the circumstances to permit the seizure of items from that location (at 3-4); (2) an evidentiary hearing was required on Burke's claimed rights and whether the United States' conduct complied with various statutory and regulatory restrictions on such searches and seizures (at 3-6); and (3) pursuant to Fed. R. Crim. P. 41(g), all of the files and information seized at Burke's address, including fruits and contraband of the specified law violations, should be immediately returned to Burke (at 11). Otherwise, per Burke, the court's order denying Burke's Motion for return of property improperly permits the United States to withhold indefinitely fruits and contraband of the crimes that fall within the "Particular Things to be Seized," as set forth in Attachment B to the warrant. *Id.* at 2. To support his arguments, Burke disregards controlling law and the contextual substance of the Order denying his motion. Instead, Burke points to an unanalogous 1994 parallel civil-criminal proceeding that occurred in the Middle District of Florida. Burke is wrong on all counts.

As explained below, the magistrate judge properly declined to exercise equitable jurisdiction and denied Burke's Motion for an order directing the United States to return all property seized pursuant to the warrant. The exercise by a district court of such jurisdiction over a pre-indictment criminal investigation is limited to exceptional cases. Under controlling precedent, such an order requires, at a minimum, a showing that the United States "callously disregarded" Burke's constitutional rights. Burke's Motion fell far short of making that showing.

Moreover, the court was within its authority to determine that there were no disputed material facts necessary to the decision of Burke's Motion and that oral argument on the motion was unnecessary. Such a decision was particularly appropriate here, given that the issues presented had been fully briefed and that, at this pre-indictment juncture, the United States' compelling interest in protecting and safeguarding the integrity of its ongoing criminal investigation curtails the areas available for appropriate inquiry. Indeed, a review of Burke's Motion reveals that Burke's true goal in pursuing such a hearing is to leverage this Court's authority to (improperly) pierce the United States' ongoing investigation and discover details about that investigation's progress, methods, techniques, focus, theories, and internal Department of Justice deliberations and decisions.[2]

---

[2] See, i.e., Doc. 25 at 12-13, 18, and 22.

## II.     RELEVANT BACKGROUND

A. The Search and Seizures

On May 4, 2023, Magistrate Judge Flynn found probable cause supported

the United States' application for a warrant to search Burke's address for records

and evidence relating to violations of 18 U.S.C. § 1030 (intentional unauthorized

access of a computer), and 18 U.S.C. § 2511 (intentional interception and

disclosure of wire, oral, or electronic communication), and issued the pertinent

warrant.[3] Attachment B to the warrant specified the "Particular Things to be

Seized" as all records and other evidence related to violations of 18 U.S.C. §§ 1030

and 2511, involving Burke and occurring after August 1, 2022.[4] Doc. 18-1 at 2-11.

FBI agents executed the warrant at the Burke address on May 8, 2023. Doc.

18-1 at 26-27. In the secondary suite behind the primary residence, the agents

located a workspace that contained hundreds of items that qualified as either a

computer or storage medium, as described in Attachment B to the warrant. The

search team left with approximately two dozen electronic devices[5] and some hard

---

[3] The warrant as issued was styled *In the Matter of the Search of Premises Located at [XXXX] N. Tampa St.*, No. 8:23-mj-1541-SPF. A redacted copy of the warrant, Attachments A and B, and related documents were later filed as a composite exhibit in this case. *See* Doc. 18-1.

[4] Attachment B included six paragraphs that described certain categories of evidence, fruits, and instrumentalities of the crimes under investigation.

[5] Per Attachment B to the warrant, instrumentalities—computers, storage media, cell phones, and smart phones—used to commit the specified crimes could be seized. Further, such instrumentalities routinely contain electronic forensic evidence of the crimes under investigation revealing evidence of who used a device, how and when a device was used and accessed, the state of mind of the user, etc. *See* Doc. 18-1 at 7-11.

copy items, which are particularized in the Evidence Collected Item Log ("Evidence Log"),[6] filed with the court as part of the warrant return. Doc. 18-1 at 28-30. Subsequent legal process in September 2023 extended back the date scope of the original warrant, allowing the investigative team to conduct its search and seizures of items then in the possession of the FBI to records and evidence relating to violations of 18 U.S.C. § 1030, involving Burke and occurring after midnight, February 20, 2022, up and through midnight, August 2, 2022. All court documents associated with that legal process are presently sealed, though a copy of the document authorizing the expansion of the date scope of the original warrant has been served upon Burke.[7]

B.  The Times Publishing Company Motion and Resulting Proceedings

Shortly after the search and seizures, The Times Publishing Company ("The Times") moved to intervene in the proceedings and requested that the court unseal all court records related to the search at the Burke address, including the probable cause affidavit (the "PC Affidavit"). Doc. 1. The proceedings were referred by this Court to Magistrate Judge Flynn, pursuant to 28 U.SC. § 636(a)(1).[8] Doc. 16.

---

[6] Each item identified in the Evidence Log is identified here by its Item #__ (e.g., Item #1).

[7] Copies of the documents composing the sealed legal process can be submitted to this Court for its convenience and review if this Court so desires. For clarity, the United States refers herein to the date range authorized by the warrant for search and seizures as beginning on February 20, 2022, at midnight (UTC), except where specified.

[8] The Times's motion was originally randomly assigned to a different magistrate judge. Per order of this Court, all proceedings in the case are proceeding before Magistrate Judge Flynn.

The United States did not object to The Times's request to intervene in the matter and, except for some agreed-upon narrowly tailored redactions, the United States did not object to The Times's request to unseal five (of six) search warrant records. Doc. 17. The court granted, in part, The Times's motion to intervene and unsealed the five court records (with agreed upon redactions). Docs. 18, 18-1. But the United States did oppose The Times's motion to unseal the PC Affidavit. The United States explained at length why the PC Affidavit must remain sealed—to protect and safeguard the integrity of the ongoing federal criminal investigation, the safety and security of law enforcement personnel, and the privacy of others—and offered substantial legal authority supporting that position. Doc. 17 at 5-9.

The court, after weighing the parties' arguments and examining the PC Affidavit in camera, denied that aspect of The Times's motion, reasoning in part:

> Almost every paragraph of the affidavit, either explicitly or implicitly, reveals details of the investigation, including how and when the alleged incident(s) occurred, the private information intruded upon, the techniques the agent employed to investigate the intrusions, and/or who was carrying out the cyber intrusions and why. Put differently, each section of the affidavit builds on the one before it, and the sum of these parts equals the Government's probable cause. If disclosed – even in redacted form – there is the real and legitimate risk that the Government's ongoing investigation would be compromised by someone piecing together the timeline, scope, and direction of the investigation. …. Even information in the affidavit that is already publicized is "inextricably intertwined with the Government's argument for probable cause" and cannot be unsealed. Sealing the entire affidavit is necessary to protect the integrity of the United States' investigation.

Doc. 23 at 4 (internal citation omitted).

C. Burke's Motions and United States' Response in Opposition

On July 21, 2023, Burke, through counsel, filed his own motion requesting that the court: (1) unseal the PC Affidavit submitted in support of the warrant executed at his address, and (2) pursuant to Fed. R. Crim. P. 41(g), order the United States to return to Burke all of the items seized from his address, along with any copies of information and data therefrom.[9] Doc. 25. Burke also filed a companion motion requesting oral argument on his motion. Doc. 26.

The United States responded in opposition to Burke's Motion, explaining, in part, that the PC Affidavit must remain sealed to protect and safeguard the integrity of an ongoing federal criminal investigation, the safety and security of law enforcement personnel, the privacy of unnamed and uncharged subjects of the investigation, and the privacy of third-party fact witnesses and potential victims. Doc. 33 at 1-2, 4-6, 16-19. The United States further explained that the court should dismiss for lack of jurisdiction the second aspect of Burke's Motion, that being his request for an order directing the United States to return all property seized pursuant to the warrant. *Id*. The United States also noted that argument on

---

[9] Burke's Motion includes multiple ***unsupported and baseless suggestions of wrongdoing*** by the United States' investigative team regarding Department policy concerning the need to secure prior authorization for search warrants that may implicate the Privacy Protection Act ("PPA"), 42 U.S.C. § 2000aa, *et seq.*, and the Department's *Policy Regarding Obtaining Information from or Records of Members of the News Media; and Regarding Questioning, Arresting, or Charging Members of the News Media* (the "News Media Policy"). *See* 28 CFR 50.10(i)(1) (revised, November 3, 2022). The United States response in opposition to Burke's Motion included a section that specifically discussed Burke's allegations in this regard and confirmed that "the government has fully complied with all aspects of its own PPA policy and its News Media Policy…." *See* Doc. 33 at 13-16.

Burke's Motion was unnecessary, given the issues presented had been fully

briefed and that, at this pre-indictment juncture, the United States' compelling

interest in protecting and safeguarding the integrity of its ongoing criminal

investigation curtails the areas available for appropriate inquiry.[10] *Id*. at 2.

### D. Order Denying Without Prejudice Burke's Motion and for United States to File a Proposed Schedule for Return of Property

On September 22, 2023, the magistrate judge entered an Order denying

Burke's Motion without prejudice. Doc. 35. Pertinent here, the magistrate judge

correctly explained the controlling law in this circuit:

> When no criminal proceedings are pending, motions under Rule 41(g) [for return of property] are considered motions in equity. *See United States v. Howell*, 425 F.3d 971, 974 (11th Cir. 2005); *Hunsucker v. Phinney*, 497 F.2d 29, 34 (5th Cir. 1974). And "[e]xercises of equitable jurisdiction . . . should be 'exceptional' and anomalous.'" *Trump v. United States*, 54 F.4th 689, 694 (11th Cir. 2022) (quoting *Hunsucker*, 497 F.2d at 32). In other words, "[o]nly the narrowest of circumstances permit a district court to invoke equitable jurisdiction." *Id*. at 697.
>
> As the Eleventh Circuit recounts in *Trump*, "'[i]t is a familiar rule that courts of equity do not ordinarily restrain criminal prosecutions.'" *Id*. at 697 (quoting *Douglas v. City of Jeannette*, 319 U.S. 157, 163 (1943)). To avoid interfering with the executive branch's criminal enforcement authority while still "offering relief in rare instances where a gross constitutional violation would otherwise leave the subject of a search without recourse," the Eleventh Circuit follows *Richey*'s "exacting test" for exercising equitable jurisdiction in cases involving the seizure of property. *Id*. Under *Richey*, a district court sitting in equity must consider four factors when deciding whether to grant a motion for return of property: (1) whether government agents displayed a "callous disregard" for the plaintiff's constitutional rights; (2) whether the plaintiff "has an individual interest in and need for the material whose return he seeks;" (3) whether the plaintiff would be irreparably injured if the property is not returned; and (4) whether the plaintiff has an

---

[10] The United States' response in opposition to Burke's Motion also included a lengthy section detailing the United States' continuing, good faith efforts to coordinate with Burke's counsel regarding the processing and return of seized material. Doc. 33 at 6-11.

> adequate remedy at law.  515 F.2d at 1243-44 (quoting *Hunsucker*, 497 F.2d at 34).
>
> ***
>
> The first *Richey* factor–whether the plaintiff has shown that the Government "callously disregarded" his constitutional rights–is the most important.  *Trump*, 54 F.4th at 698 (citing *United States v. Chapman*, 559 F.2d 402, 406 (5th Cir. 1977) and emphasizing the "indispensability of an accurate allegation of callous disregard.").

Doc. 35 at 8-9.

The magistrate judge then properly examined the first *Richey* factor—

whether Burke had demonstrated that the government "callously disregarded"

his constitutional rights.[11] Doc. 35 at 9-13. In concluding that Burke had failed

to demonstrate "callous disregard," the court stated (emphasis added):

> It appears Burke is suggesting that if there was no underlying crime, the First Amendment and/or the PPA prohibited the Government from searching and seizing Burke's materials.  Thus, according to Burke, the Government showed "callous disregard" for his First Amendment rights.
>
> While it should be emphasized that Burke has not been charged with a crime, *the Government has established probable cause to believe that Burke's home contained the fruits, instrumentalities and/or evidence of violations of 18 U.S.C. § 1030 and 18 U.S.C. § 2511.  In other words, the items the Government is authorized to seize under the warrant do not qualify as protected work product or documentary materials under the PPA because they are contraband or fruits of the crime under investigation.*  Any PPA materials[7] that may exist on the seized devices were commingled with criminal evidence on computers owned or operated by Burke, the subject of a criminal investigation.  *Burke has not demonstrated the indispensable element of "callous disregard" of his constitutional rights.*

*Id.* at 13. The magistrate judge then discussed the remaining three *Richey*

factors, concluding that none of the factors weighed in Burke's favor, and

declined to exercise equitable jurisdiction to order the return of Burke's seized

---

[11] *See Richey v. Smith*, 515 F.2d 1239 (5th Cir. 1975).

property. *Id*. at 13-16. The court added (internal citations and quotations

omitted):

> The Court recognizes that a substantial amount of time can be involved
> in the forensic imaging and review of information. . . due to the sheer size
> of the storage capacity of the media, difficulties created by encryption and
> booby traps, and the workload of the computer labs.
>
>       Here, according to Burke, over 100 terabytes of data were seized.
> Reviewing such voluminous information is a lengthy process–one
> undoubtedly prolonged by the protocols the Government has put in place
> to ensure protected information stays that way. While the Government is
> entitled to a reasonable amount of time to review the seized materials, the
> time afforded to the Government is not unlimited. The Court recognizes
> that at some point not yet reached, the delay may become unreasonable
> and constitute "callous disregard" of Burke's rights.

*Id*. at 16. The court then directed the United States to file a proposed reasonable

schedule for the return to Burke of copies or originals of all seized materials,

except those "Particular Things to be Seized" as set forth in Attachment B to the

warrant. *Id*. at 17. The court also denied Burke's request for oral argument on

Burke's Motion, noting that under Rule 41(g): "a hearing is required only when

necessary to receive evidence on an issue of fact. Here, there were no disputed

material facts necessary to the decision of the motion."[12] Doc. 36 (internal

quotation omitted). Thereafter, on September 29, 2023, the United States, as

directed, submitted a status report and proposed schedule for the return to Burke

of copies or originals of seized property.[13] Doc. 37.

---

[12] *See, e.g., United States v. Dean*, 100 F.3d 19, 21 (5th Cir. 1996).

[13] That status report summarized the government's production efforts, and explained that the United
States presently estimated that the remaining review-and-production effort can be completed within
10 weeks. The undersigned also offered to submit status reports to the court on October 20th,
November 10th, and November 24th, 2023, updating the court about the United States' progress and

E.  United States Return of Copies or Originals of Seized Material

The United States acknowledged in its response to Burke's Motion that the United States has an obligation to return to Burke any item seized from the Burke address that is determined to contain only information falling outside the authority to seize under Attachment B to the warrant, and to eliminate any image of that item in its systems. Doc. 33 at 10-11. The United States further explained that, as to any seized items that contain a mix of information falling inside and outside the authority to seize under Attachment B, the United States will produce to Burke copies of all folders and files contained in the items, withholding only those files that fall within the authority to seize that constitute contraband or fruits of the identified crimes.

Pursuant to that effort, the United States first segregated the folders/files that predated midnight, February 20, 2022,[14] downloaded copies of those folders/files onto drives provided by Burke, and produced (or is prepared to produce) the copies to Burke. Folders/files dated midnight or after that date have been subjected to an internal filter review, after which approved nonprivileged and otherwise unprotected folders/files have been made available to the investigative team for its

---

any related issues. Doc. 37. To that end, and because the information is pertinent to this October 20th response, the United States is attaching an updated status report as Attachment A.

[14] As explained above, subsequent legal process extended back the date scope of the original warrant for violations of 18 U.S.C. § 1030 to midnight, February 20, 2022. Thus, while the United States was originally segregating the folder/files that predate midnight, August 22, 2022, *see* Doc. 33 at n.9, the operative date in most instances going forward will be February 20, 2022.

review and continued rolling production to Burke of all folders/files that do not constitute contraband or fruits of the identified crimes.

As of the date of this filing, the United States has returned to Burke twelve original items—Items #2, #5, #9, #12, #15, #16, #17, #18 (two of three phones returned), #19, #21, #22, and #23—and has eliminated (or will be eliminating) any images of those items from government systems. The United States has also produced, or stands ready to produce, to Burke copies of *folders/files* contained on Items #3, #4, #6, #7, #8, #10, #14, #20, and #24 that predate midnight, February 20 or August 22, 2022, as authorized. The United States is also prepared to begin producing copies of folders/files that postdate February 20, 2022, and will initiate that process utilizing a drive provided by Burke to the United States yesterday, Thursday, October 19, 2023.  Additional detail concerning the United States' rolling productions of folders/files to Burke is contained in Attachment A, the United States' *Return/Production Status Report as of October 20, 2023.*

## III.   ARGUMENT

A. After Determining that Burke Failed to Demonstrate "Callous Disregard" (or any other *Richey* factor), the Magistrate Judge Properly Declined to Exercise Equitable Jurisdiction to Order Return of Burke's Seized Property.

Burke, pursuant to Fed. R. Crim. P. 41(g), is attempting to use this Court's jurisdiction to block the United States from using lawfully seized information and other evidence in a criminal investigation. However, under the circumstances presented here where Burke has failed to demonstrate "callous disregard," this

Court lacks jurisdiction to order the United States to return Burke's property during its criminal investigation. This Court has no general equitable authority to superintend federal criminal investigations. The basis of this Court's jurisdiction to order pre-indictment return of property is grounded in the Court's supervisory power over its officers and is equitable in nature. *See Hunsucker v. Phinney*, 497 F.2d 29, 34 (5th Cir. 1974). This Court's exercises of equitable jurisdiction "should be exceptional and anomalous." *Trump v. United States.*, 54 F.4th 689, 694 (11th Cir. 2022) (internal quotation marks omitted). Significantly, the burden of establishing jurisdiction rests on Burke—and "[o]nly the narrowest of circumstances permit a district court to invoke equitable jurisdiction." *Id*. at 697. Indeed, "[s]uch decisions must be exercised with caution and restraint, as equitable jurisdiction is appropriate only in exceptional cases where equity demands intervention." *Id*. (internal quotations and citations omitted).

Thus, as correctly recognized by the magistrate judge when considering Burke's Motion, Doc. 35 at 8-9, to avoid "unnecessary interference with the executive branch's criminal enforcement authority" while maintaining the possibility of "relief in rare instances where a gross constitutional violation would otherwise leave [a] subject of a search without recourse[,]" *Trump*, 54 F.4th at 697, courts should limit this jurisdiction using the four-factor test delineated in *Richey*. *See Richey*, 515 F.2d at 1243–44. But the four factors are not to be weighed equally. Instead, Burke must first establish through an "accurate allegation" the government's "callous disregard for his constitutional rights" before this Court

13

intervenes in the United States' ongoing investigation. *Trump*, 54 F.4th at 698.
"Otherwise, a flood of disruptive civil litigation would surely follow. This restraint
guards against needless judicial intrusion into the course of criminal
investigations—a sphere of power committed to the executive branch." *Id*. (internal
quotation and citation omitted). Here, as determined by the magistrate judge, Burke
failed to establish that the United States "callously disregarded" his constitutional
rights (and that none of the other *Richey* factors weighed in Burke's favor). Doc. 35
at 13-16.

First, Burke's prior-restraint argument fails. He has not identified any
material seized by the United States which he intended to publish imminently, and
therefore it is unclear how the seizure constitutes a prior restraint. Second, the
United States is producing originals or copies of all folders/files that are not
contraband or fruits of identified crimes so that Burke can have access to the
material. It does not constitute a prior restraint for the United States to retain the
materials that a magistrate judge found probable cause to believe Burke illegally
obtained. *See Zurcher v. Stanford Daily*, 436 U.S. 547, 567 (1978) ("[P]resumptively
protected materials are not necessarily immune from seizure under warrant for use
at a criminal trial. Not every such seizure, and not even most, will impose a prior
restraint.").

In *Zurcher*, the Supreme Court also rejected the argument raised by Burke in
his original motion, Doc. 25 at 21-22, that a warranted search will have a chilling
effect on sources. *See Zurcher*, 436 U.S. at 566. ("Nor are we convinced, any more

than we were in [*Branzburg*] that confidential sources will disappear and that the press will suppress news because of fears of warranted searches."). Simply put, in *Zurcher*, the Supreme Court held, "Properly administered, the preconditions for a warrant—probable cause, specificity with respect to the place to be searched and the things to be seized, and overall reasonableness—should afford sufficient protection against the harms that are assertedly threatened by warrants for searching newspaper offices." *Id*. at 565. And *Zurcher* concerned a search of a student newspaper, the Stanford Daily, that had created work product—articles and photographs—*in reporting on a demonstration* that had erupted into violence *but in no way involved any allegation of unlawful acts* by Stanford Daily staff members.[15]

Here, Burke has been afforded the protections discussed in *Zurcher*. A magistrate judge reviewed the PC Affidavit and determined that probable cause supported a warrant to search Burke's address for records and evidence related to violations of 18 U.S.C. §§ 1030 and 2511. Thereafter, the magistrate judge issued a warrant, specifying the place to be searched (Burke's address) and the things to be seized, listed in Attachment B to that warrant. Subsequent legal process, again considered by the magistrate judge, extended back the date scope of that warrant from August 1, 2022, to February 20, 2022. The magistrate judge then reviewed and considered Burke's Motion challenging the warrant and subsequent

---

[15] Congress passed the PPA in response to *Zurcher*. And, although the PPA prohibits the search and seizures of materials intended for public dissemination, the statute has no effect on the constitutional analysis in *Zurcher*.

proceedings and the United States' response in opposition to that motion, and reiterated that, "the Government has established probable cause to believe that Burke's home contained the fruits, instrumentalities, and/or evidence of violations of 18 U.S.C. § 1030 and 18 U.S.C. § 2511." Doc. 35 at 13. As a result, Burke's objection and argument that the magistrate judge's finding of probable cause to believe Burke's property contained the fruits, instrumentalities, and/or evidence of violations of 18 U.S.C. §§ 1030 and 2511 was insufficient under the circumstances to permit the seizure of items at his address, Doc. 39 at 3-4, is contrary to controlling law and should be rejected.

Grasping to include some supporting authority, Burke's Objections bootstrap a reference to *Franks v. Delaware*, 438 U.S. 154, 156, 165-71 (1978). But *Franks* is unanalogous because it concerned a review of a probable cause affidavit ***after*** charges had been initiated against the defendant. That is not the case here: this matter concerns an ongoing investigation in the early stages where no charges have been brought against any defendant.

There is also no merit to Burke's argument that the United States acted in callous disregard of his Fourth Amendment rights by unlawfully seizing his property. The United States obtained a search warrant from this Court which it supported with a probable cause affidavit. While Burke speculates about the United States' theory of the case and argues that he did not commit a crime, the magistrate judge found (and has repeated) that the United States had probable cause to search his address and to seize certain property located there. This is not

16

the juncture to litigate the ultimate merits of his case. Because Burke failed to establish his general allegation of "callous disregard," the magistrate judge did not need to entertain the other *Richey* factors. *See Trump*, 54 F.4th at 698. But he did and determined that none of the *Richey* factors weighed in Burke's favor. Doc. 35 at 13-16. The magistrate judge thereafter properly declined to intervene in the ongoing investigation and to exercise the court's equitable jurisdiction to order the return of Burke's seized property. *Id.* at 16.

Burke's Objections' reliance upon another unanalogous case *United States v. Account Services, Inc. et al.* ("ASI"), Doc. No. 94-2182 (11th Cir. 1994) (unpublished) is likewise misplaced. That case concerned a parallel civil-criminal investigation initiated by the government: a civil action brought under 18 U.S.C. § 1345,[16] seeking an *ex parte* temporary restraining order and injunctive relief against ASI for an alleged telemarketing fraud scheme violative of several fraud statutes, including bank fraud, and a criminal investigation that included the execution of a search warrant at the ASI property. *See* Doc. 39-1 at 1-2. There, ASI moved to compel the return of its records and equipment seized during the execution of the warrant in order to prepare for a preliminary injunction hearing in the civil action, Doc. 39-2 at 2-3, and the government, apparently recognizing that ASI required its business

---

[16] Section 1345 permits the Attorney General to initiate a civil action in federal court to enjoin certain law violations, including banking law violations. 18 U.S.C. § 1345. Said provision includes a subsection dictating that the court overseeing the civil action "shall proceed as soon as practicable to [a] hearing and determination" of the action and dictates that the proceeding is to be governed under the Federal Rules of Civil Procedure, absent an indictment having been returned against the respondent. 18 U.S.C. § 1345(b).

records to prepare for that hearing, still declined to return the records to the company, essentially creating for the government a have-its-cake-and-eat-it-too scenario. Doc. 39-1 at 2-3. In any event, the ASI case apparently concerned allegations of telemarketing fraud and banking law violations and resulting issues relating to the copying and return to ASI of its business and other operational material prior to a preliminary civil injunction hearing, with no direct mention of any issue concerning the seizure of fruits of specified crimes and contraband.

Here, in stark contrast, as discussed above at pages 4-10, the magistrate judge determined that probable cause existed to believe that Burke's address contained contraband and/or fruits of specified crimes under investigation—violations of 18 U.S.C. §§ 1030 (intentional unauthorized access of a computer) and 2511 (intentional interception and disclosure of wire, oral, or electronic communication). Violations of 18 U.S.C. §§ 1030 and 2511 often result in a subject illegally securing the fruits and contraband of such criminal conduct, and the seizure by the United States of those fruits and contraband is unremarkable. And, of course, this proceeding does not involve an ongoing parallel civil action initiated by the government.

B.  A Hearing was Not Required

Burke's Objection that an evidentiary hearing was required on Burke's claimed rights and whether the United States had complied with various statutory and regulatory restrictions is erroneous. The magistrate judge, in denying Burke's request for a hearing, specifically noted that "there were no disputed material facts

18

necessary to the decision of the motion." Doc. 36. In such a case, a hearing under

Fed. R. Crim. P. 41(g) is not required. *See, e.g.*, *United States v. Davis*, 789

Fed.Appx. 105 (11th Cir. 2019) (unpublished). As explained by the Fifth Circuit in

*Dean*, 100 F.3d at 21 (internal quotation and citation omitted): "[e]videntiary

hearings are not granted [in such circumstances] as a matter of course; such a

hearing is required only if any disputed material facts are necessary to the decision

of the motion." The proceedings before the magistrate judge involved extensive

briefing by Burke (that included a lengthy attachment) and the United States, and

the magistrate judge had reviewed and considered the PC Affidavit. That Burke

wished to explore a host of issues unrelated to a decision of his motion is irrelevant.

Further, at this pre-indictment juncture, the United States' compelling interest in

protecting and safeguarding the integrity of its ongoing investigation curtails the

areas available for appropriate inquiry. Given that, the magistrate judge's decision

to deny the request for a hearing was sound.

Finally, Burke's Objection that the magistrate judge's order improperly

permits the United States to withhold indefinitely fruits and contraband of the

crimes that fall within the "Particular Things to be Seized," as set forth in

Attachment B to the relevant warrant, is also misplaced. Doc. 39 at 2. The

magistrate judge denied Burke's Motion without prejudice. Doc. 35 at 1. There

may well come a time—e.g., following the filing of a complaint or indictment

against Burke, or some other event or time period—when Burke is properly

situated to challenge the seizures of fruits of the specified crimes, contraband, and

19

instrumentalities used to commit the crimes, but that time is not at this early stage of the ongoing complex criminal investigation. Moreover, as demonstrated in Attachment A to this filing—the United States' *Return/Production Status Report as of October 20, 2023*—the United States has diligently worked to return terabytes of folders/files to Burke and has every intention to continue doing so in good faith. Burke's Objections in this regard are premature.

## IV.   CONCLUSION

WHEREFORE, this Court should deny Burke's Objections seeking reconsideration of the magistrate judge's denial of Burke's Motion. The magistrate judge's determinations were sound, and Burke has not identified any aspect of the magistrate judge's Order that should be overturned.

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney

By:      */s/ Jay G. Trezevant*
Jay G. Trezevant
Assistant United States Attorney
Florida Bar No. 0802093
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone:   (813) 274-6000
Facsimile:    (813) 274-6358
E-mail: jay.trezevant@usdoj.gov

**Times Publishing Company v. U.S.**          **Case No. 8:23-mc-00014-WFJ-SPF**

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 20, 2023, I electronically filed the foregoing

with the Clerk of the Court by using the CM/ECF system which will send a notice of

electronic filing to the following:

Michael Maddux, Esq.

Mark Rasch, Esq.

Jon M. Philipson, Esq.


<u>*/s/ Jay G. Trezevant*</u>
Jay G. Trezevant
Assistant United States Attorney